UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| ESTATE OF JAMES E. ROGERS, by and through Angela Crigger, Personal Representative, ARIK ROGERS, BRIAN ROGERS, and Minor Children M.R., J.R., and O.R., by and through Julia Rogers,<br><br>　　　　　Plaintiffs,<br><br>　　　　　v.<br><br>CITY OF SPOKANE, WASHINGTON and OFFICER DAN LESSER,<br><br>　　　　　Defendants. | No. 2:14-cv-00313-SAB<br><br>**ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** |

　　　Before the Court is Defendants' Motion for Summary Judgment, ECF. No. 33. The motion was heard without oral argument. Plaintiffs are represented by Richard Wall. Defendants are represented by Stewart A. Estes.

　　　This is a civil rights case that involves the use of deadly force. The decedent James E. Rogers was shot and killed by Defendant Dan Lesser, after he had barricaded himself in an overturned vehicle. Defendants maintain that Rogers pointed a gun at Lesser. Plaintiffs dispute this.

　　　Defendants now move for summary judgment, asserting that because Rogers was an armed, suicidal menace, deadly force was justified regardless of whether the gun was pointed directly at Defendant Lesser. ECF No. 51 at 3.

**ORDER DENYING
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** ~ 1

### A. Summary Judgment Motion Standard

Summary judgment is appropriate if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). There is no genuine issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict in that party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). The moving party had the initial burden of showing the absence of a genuine issue of fact for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). If the moving party meets its initial burden, the non-moving party must go beyond the pleadings and "set forth specific facts showing that there is a genuine issue for trial." *Id.*; *Anderson*, 477 U.S. at 248.

In addition to showing there are no questions of material fact, the moving party must also show it is entitled to judgment as a matter of law. *Smith v. University of Washington Law School*, 233 F.3d 1188, 1193 (9th Cir. 2000). The moving party is entitled to judgment as a matter of law when the non-moving party fails to make a sufficient showing on an essential element of a claim on which the non-moving party has the burden of proof. *Celotex*, 477 U.S. at 323. The non-moving party cannot rely on conclusory allegations alone to create an issue of material fact. *Hansen v. United States*, 7 F.3d 137, 138 (9th Cir. 1993).

When considering a motion for summary judgment, a court may neither weigh the evidence nor assess credibility; instead, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255.

### B. Facts

The following facts are taken in the light most favorable to Plaintiff, the non-moving party.

1. Rogers was suicidal. He had gone to his place of employment, parked in

**ORDER DENYING**
**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** ~ 2

the parking lot, and brandished and fired a shotgun.

2. The police were called. Rogers left the parking lot, crashed into a wall, and then proceeded to drive his van down the street where it crashed and landed on its side.

3. Rogers had a loaded weapon inside the van. After the crash, he was suspended in the driver's seat, presumably secured by his seat belt. He was able to release the belt and he fell down near the passenger seat/window, which was against the ground since the van had tipped. His back was against the roof of the van.

4. Trained negotiators tried to communicate with Rogers for over two hours. He never responded except he did put his thumb up on occasion when asked and he did move his legs once when asked if he needed medical treatment.

5. At one point, Rogers tried to place the shotgun barrel under his chin. He was unable to do so because of the long barrel and the lack of room in the van. It also appeared that he may have been attempting to get the gun through the roof as instructed. Shortly after he manipulated the gun, he was shot.

6. Defendant Lesser arrived at the scene after the incident began. He armed himself with his Colt M4 Commando rifle and Glock .45 handgun. He put on a ballistic vest. He then assisted a nearby resident who was suffering from a burst appendix by escorting him to medical attention. He then drove an armored vehicle to an area east of where Roger's van was located. He positioned the armored vehicle behind the van and took a position of cover in the vehicle's turret. He then turned on the bright headlights of the vehicle to illuminate the interior of the van through the rear windows, and also directed another officer to park a patrol car next to the armored vehicle so that the patrol car's mounted spot lights could also be used to illuminate the inside of the van.

7. As the police were announcing "your sister Angela is here and you have seven children at home," Defendant Lesser shot six rounds, hitting Rogers five

**ORDER DENYING**
**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** ~ 3

times and causing six gunshot wounds.

      8.    Defendant Lesser maintains that Rogers at some point looked at him and waved. Rogers then picked up a shotgun and began to manipulate it. The shotgun was initially pointing toward the front of the vehicle and then was turned so it was pointing upwards. Rogers then turned the shotgun so that it was pointing toward the rear of the van in Defendant Lesser's direction. Rogers then shouldered the shotgun and raised the barrel pointing it directly at Defendant Lesser.

      9.    Plaintiffs' expert Chesterene Cwiklik concluded that the shotgun could not have been pointed at Officer Lesser at the time he fired the shots that killed Rogers, and Rogers had not been facing Officer Lesser at the time the shots were fired. ECF No. 47.

      10.    Defendants' expert Matthew Noedel concluded that Rogers was shot while his left hand was extended toward the rear of the van, holding the front of the gun at shoulder level. ECF No. 44.

**C.    Section 1983 and Qualified Immunity**

    **1.    Section 1983**

To state a claim under § 1983, Plaintiffs must establish two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated; and (2) that the alleged violation was committed by a person acting under the color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Naffe v. Frey*, 789 F.3d 1030, 1035 (9th Cir. 2015).

    **2.    Use of Deadly Force**

In evaluating a Fourth Amendment claim of excessive force, courts must ask "whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them." *Graham v. Connor,* 490 U.S. 386, 396–97 (1989); *Glenn v. Washington County*, 673 F.3d 864, 871 (9th Cir. 2011). Courts must balance the extent of the intrusion on the individual's Fourth Amendment rights against the government's interests to determine whether the officer's

**ORDER DENYING**
**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** ~ 4

conduct was objectively reasonable based on the totality of the circumstances. *Price v. Sery,* 513 F.3d 962, 968 (9th Cir. 2008). This analysis involves three steps. First, the court must assess the severity of the intrusion on the individual's Fourth Amendment rights by evaluating "the type and amount of force inflicted." *Miller v. Clark County,* 340 F.3d 959, 964 (9th Cir. 2003). Second, the court must evaluate the government's interests by assessing (1) the severity of the crime; (2) whether the suspect posed an immediate threat to the officers' or public's safety; and (3) whether the suspect was resisting arrest or attempting to escape. *Id.* Third, the gravity of the intrusion on the individual against the government's need for that intrusion is balanced." *Id.* The court must only consider the circumstances of which the officer was aware when he employed deadly force. *Hayes v. County of San Diego*, 736 F.3d 1223, 1233 (9th Cir. 2013). Ultimately, the court must balance the force was used by the officers against the need for such force to determine whether the force used was "greater than is reasonable under the circumstances." *Santos v. Gates,* 287 F.3d 846, 854 (9th Cir. 2002).

In deadly force cases, "[w]here the suspect poses no immediate threat to the officer and no threat to others, the harm resulting from failing to apprehend him does not justify the use of deadly force to do so." *Tennessee v. Garner,* 471 U.S. 1, 11–12 (1985). The parties' "relative culpability" *i.e.,* which party created the dangerous situation and which party is more innocent, may also be considered. *Scott v. Harris,* 550 U.S. 372, 384 (2007). The mere fact that a suspect possesses a weapon does not justify deadly force. *Haugen v. Brosseau*, 351 F.3d 372, 381 (9th Cir. 2003); *see also Curnow v. Ridgecrest Police*, 952 F.2d 321, 325 (9th Cir. 1991) (holding that deadly force was unreasonable where the suspect possessed a gun but was not pointing it at the officers and was not facing the officers when they shot). On the other hand, threatening an officer with a weapon justifies the use of deadly force. *Hayes,* 736 F.3d at 1234; *see also Smith v. City of Hemet*, 394 F.3d 689, 704 (9th Cir. 2005) (recognizing that "where a suspect threatens an

**ORDER DENYING
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** ~ 5

officer with a weapon such as a gun or a knife, the officer is justified in using deadly force). That said, "[a] simple statement by an officer that he fears for his safety or the safety of others is not enough, however; there must be objective factors to justify such a concern." *Hayes*, 736 F.3d at 1234 (quotations omitted).

Finally, in police misconduct cases, summary judgment should only be granted "sparingly" because the reasonableness of force used is ordinarily a question of fact for the jury. *Espinosa v. City & County of San Francisco*, 598 F.3d 528, 537 (9th Cir. 2010).

### 3. Substantive Due Process

Children have a substantive due process right in their relationship with their parents that can be vindicated through a Section 1983 action. *Smith v. City of Fontana*, 818 F.2d 1411, 1418 (9th Cir. 1987) (*overruled on other grounds by Hodgers-Durgin v. de la Vina*, 199 F.3d 1037 (9th Cir. 1999). This right is derived from the right to be free from State interference with the companionship and society of one's parent. *Id.* To violate substantive due process, the alleged conduct must "shock the conscience" and "offend the community's sense of fair play and decency." *Marsh v. Connty of San Diego*, 680 F.3d 1148, 1154 (9th Cir. 2012) (*citing Rochin v. Calif.*, 342 U.S. 165, 172-73 (1952)). In cases where an officer encounters fast-paced circumstances presenting competing public safety obligations, the plaintiff must show that the officer acted with the purpose to harm that was unrelated to legitimate law enforcement objectives. *Porter v. Osborn*, 546 F.3d 1131, 1137 (9th Cir. 2008).

### 4. Qualified Immunity

Qualified immunity shields government officials from civil damages liability unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct. *Reichle v. Howards*, __ U.S. __, 132 S.Ct 2088, 2093 (2012). "Requiring the alleged violation of law to be clearly established balances . . . the need to hold public officials accountable when

**ORDER DENYING
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** ~ 6

they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Wood v. Moss*, __ U.S. __, 134 S.Ct. 2056, 2067 (2014) (quotations omitted).

In determining whether Defendant Lesser is entitled to qualified immunity, the Court applies a two-step analysis: (1) whether the facts alleged show that the official's conduct violated a constitutional right; and (2) whether the right was clearly established. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). "To be clearly established, a right must be sufficiently clear that every reasonable official would have understood that what he is doing violates that right. In other words, existing precedent must have placed the statutory or constitutional question beyond debate." *Reichle*, 132 S.Ct. at 2094 (quotations omitted). "This inquiry, it is vital to note, must be undertaken in light of the specific context of the case, not as a broad general proposition." *Saucier*, 533 U.S. at 201. "If judges thus disagree on a constitutional question, it is unfair to subject police to money damages for picking the losing side of the controversy." *Wilson v. Layne*, 526 U.S. 603, 618 (1999). That said, it is not necessary that "the very action in question has previously been held unlawful, but it is to say that in the light of pre-existing law the unlawfulness must be apparent." *Hope v. Pelzer*, 536 U.S. 730, 739 (2002).

"[W]hen properly applied, qualified immunity protects all but the plainly incompetent or those who knowingly violate the law." *Taylor v. Barkes*, __ U.S. __, 135 S.Ct. 2042, 2044 (2015). Stated another way, "an officer is entitled to qualified immunity unless existing case law '*squarely governs* the case here'" *Mendez v. Cnty of Los Angeles,* __ F.3d __ (2016 WL 805719 *3 (9th Cir. Mar. 2, 2016) (quoting *Mullenix v. Luna*, __ U.S. __, 136 S.Ct 305, 309 (2015) (emphasis in original.

### D. Analysis

In reviewing deadly use of force cases, the Ninth Circuit has instructed that the most important factor in the analysis is whether the individual posed an

"immediate threat to the safety of the officers or others." *Glenn v. Washington County*, 673 F.3d 864, 871 (9th Cir. 2011). In the cases in which the Circuit held the officers' use of deadly force was reasonable, it was clear from the facts that the individual posed an "immediate threat to the safety of the officers or others." *See Blanford v. Sacramento County,* 406 F.3d 1110, 1115–19 (9th Cir. 2005)*, Long v. City & County of Honolulu,* 511 F.3d 901, 906 (9th Cir. 2007); and *Scott v. Henrich,* 39 F.3d 912, 914 (9th Cir.1994).[1]

On the other hand, in *Glenn v. Washington County*, an 18 year old was shot and killed in his driveway by police officers after his mother called 911 because her son was distraught, intoxicated, and had threatened to kill himself with a pocketknife. 673 F.3d at 865. He had also broken household property. *Id.* Within four minutes of their arrival, the officers shot him with a beanbag shotgun, and then shot him 8 times with their service weapons.

The Circuit held that when viewing the facts favorably to the plaintiff, the officer's use of force was not reasonable. *Id.* at 872. It also rejected the premise that when a suspect is armed with a deadly weapon but has not committed a significant crime or threatened anyone, the officers' use of force would be reasonable as a matter of law. *Id.* at 872-73. Additionally, the fact that the suspect was suicidal did not justify the use of deadly force. *See id.* at 872. ("We assume that the officers could have used some reasonable level of force to try to prevent

---

[1] In *Blanford*, the suspect was armed with a 2 ½ ft sword, and when officers ordered him to put it down, he instead raised it up and growled. 406 F.3d at 1116. In *Long*, the suspect, who officers knew had already shot two people, carried a .22 caliber rifle, and, just before being fired upon by officers, raised his rifle to chest level and shouted "I told you fuckers to get the fuck back. Have some of this." 511 F.3d at 904-05. In *Scott*, the suspect held a long gun and pointed it at officers. 39 F.3d at 914.

**ORDER DENYING
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** ~ 8

Lukus from taking a suicidal act. But we are aware of no published cases holding it reasonable to use a *significant* amount of force to try to stop someone from attempting suicide. Indeed, it would be odd to permit officers to use force capable of causing serious injury or death in an effort to prevent the possibility that an individual might attempt to harm only himself. We do not rule out that in some circumstances some force might be warranted to prevent suicide, but in cases like this one the 'solution' could be worse than the problem.").

Similarly, the "desire to resolve quickly a potentially dangerous situation is not the type of governmental interest that, standing alone, justifies the use of force that may result in serious injury." *Id.* (citing *Doerle v. Rutherford*, 272 F.3d 1272, 1281 (9th Cir. 2001)). Also, when dealing with an emotionally disturbed individual who is creating a disturbance or resisting arrest, as opposed to a dangerous criminal, officers typically use less forceful tactics. *Id.* As the Circuit explained, this is "because when dealing with a disturbed individual, increasing the use of force may . . . exacerbate the situation, unlike when dealing with a criminal, where increased force is more likely to bring a dangerous situation to a swift end." *Id.* (quotations omitted).

In viewing the facts in the light most favorable to Plaintiffs, as the Court is required to do, the Court concludes that summary judgment is not appropriate. There is evidence in the record that contradicts Defendant's version of the facts, namely that the gun was pointed at Defendant Lesser. It is undisputed that there was no warning given before Defendant Lesser employed deadly force. It is undisputed that Defendant Lesser was aware that Rogers was emotionally disturbed and it is undisputed that Rogers was not actively resisting arrest, or attempting to evade arrest by flight. Additionally, there is evidence in the record for a reasonable jury to conclude that Rogers was trying to be responsive to the negotiator's attempts to communicate with him and the act of handling or manipulating the shotgun in some manner was in response to the requests for him

**ORDER DENYING
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** ~ 9

to put the gun out of the van. Consequently, whether Defendant Lesser's use of force was reasonable under these facts is for the jury to decide. *See Glenn*, at 871 (quoting *Smith v. City of Hemet*, 394 F.3d 689, 701 (9th Cir. 2005) ("Because the excessive force inquiry nearly always requires a jury to sift through disputed factual contentions, and to draw inferences therefrom, we have held on many occasions that summary judgment or judgment as a matter of law in excessive force cases should be granted sparingly.").

Similarly, questions of fact preclude summary judgment on Plaintiffs' substantive due process claim. Finally, Defendant Lesser is not entitled to qualified immunity. There are genuine issues of fact regarding whether he used excessive force that are also material to the proper determination of the reasonableness of his belief in the legality of his actions. *See Espinosa*, 598 F.3d at 532. Ultimately the reasonableness of Defendant Lesser's actions, including whether he made a reasonable mistake in law or fact, is for the jury to decide. *See Santos*, 287 F.3d at 855 n.12 (finding it premature to decide the qualified immunity issue "because whether the officers may be said to have made a 'reasonable mistake' of fact or law may depend on the jury's resolution of disputed facts and the inferences it draws therefrom.").

//
//
//
//
//
//
//
//
//
//

**ORDER DENYING**
**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** ~ 10

Accordingly, **IT IS HEREBY ORDERED:**

1. Defendant's Motion for Summary Judgment, ECF No. 33, is **DENIED**.

**IT IS SO ORDERED.** The District Court Executive is hereby directed to file this Order and provide copies to counsel.

**DATED** this 23rd day of March, 2016.



Stanley A. Bastian
United States District Judge

ORDER DENYING
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 11